1  LAW OFFICES OF DALE K. GALIPO
2  Dale K. Galipo (SBN 144074)
   Marcel F. Sincich (SBN 319508)
   21800 Burbank Blvd., Suite 310
3  Woodland Hills, CA 91367
   Tel:  (818) 347-333/ Fax:  (818) 347-4118
4  dalekgalipo@yahoo.com; msincich@galipolaw.com

5  Luis A. Carrillo, Esq. (SBN 70398)
   Michael S. Carrillo, Esq. (SBN 258878)
6  CARRILLO LAW FIRM, LLP
   1499 Huntington Drive, Suite No. 402
7  South Pasadena, California 91030
   Tel:  (626) 799-9375/Fax: (626) 799-9380
8  lac4justice@gmail.com; mc@carillofirm.com

9  *Attorneys for Plaintiffs*

10                    **UNITED STATES DISTRICT COURT**

11                   **CENTRAL DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| 13  M.M.M., individually and as successor in interest to Jose Magallon and by and through her guardian ad litem, Danielle Holt Dixon; CARLOS MAGALLON, individually; and ESMERALDA CASTELLANOS, individually, | **Case No.: 18-CV-06162-DMG-KS** [*Honorable Dolly M. Gee*] **THIRD AMENDED COMPLAINT FOR DAMAGES** |
| Plaintiffs, vs. | 1. Denial of Medical Care (28 U.S.C. §1983); 2. Fourteenth Amendment Interference with Familial Relations (28 U.S.C. §1983); 3. *Monell* Liability for Failure to Train (28 U.S.C. §1983); 4. *Monell* Liability for Unconstitutional Custom and Practice (28 U.S.C. §1983); 5. Denial of Medical Care (California Law); 6. Negligence. |
| COUNTY OF VENTURA, a municipality; CORRECTIONAL MEDICAL GROUP COMPANIES, INC.; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED; JENNIFER ALCARAZ; JOANA BAEZ; DIANA BELMONTES; HEATHER HUFFMAN, M.D.; EUNICIA MANSAYON; BRADLEY BORDON; STEVEN DONLON; MANUAL ESPARZA; PAUL JESSON; JAMES SEGOVIA; RAUL ZAMORA; and DOES 1-10, inclusive, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## I.     <u>INTRODUCTION</u>

1.     This civil rights in-custody death case concerns the death of Jose Magallon (decedent or "Mr. Magallon"), a 37 year-old Hispanic male, who died while in the custody of the County of Ventura Sheriff's Department.  M.M.M. is the decedent's minor daughter and brings survival claims on the decedent's behalf as his lawful successor in interest and on her own behalf in her individual capacity for wrongful death.  CARLOS MAGALLON and ESMERALDA CASTELLANOS are the decedent's parents and they bring claims in their individual capacities for wrongful death.  Plaintiffs bring claims and seek damages under state and federal constitutional, statutory, and common law.  Plaintiffs also seek costs and reasonable attorneys' fees.

## II.     <u>VENUE AND JURISDICTION</u>

2.     This civil action is brought to redress violations of the laws of the State of California and the Fourth and Fourteenth Amendments of the United States Constitution as protected by 42 U.S.C. §§ 1983 and 1988.  Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983.  Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in and all incidents, events, and occurrences giving rise to this action occurred in the County of Los Ventura, State of California, which is located in this Central District of California.

## III.     <u>PARTIES</u>

3.     Jose Magallon is the decedent. Mr. Magallon died on July 12, 2017 while in the custody of the Ventura County Sheriff's Department.  Mr. Magallon's death, which occurred sometime between 9:00 a.m. and 10:00 a.m. on July 12, 2017, was proximately caused by the inadequate medical care provided by the County of Ventura Sheriff's department.

4.     Plaintiff M.M.M. is the decedent's minor daughter and brings survival claims in a representative capacity on the decedent's behalf as his lawful successor in interest pursuant to California Code of Civil Procedure § 377.30 and § 377.60.

2

M.M.M. also brings claims on her own behalf in her individual capacity for wrongful death.  M.M.M. also files an application for the appointment of Danielle Holt Dixon, her natural and custodial mother, as her guardian ad litem

5.    Plaintiff CARLOS MAGALLON is the father of the decedent and sues in his individual capacity for wrongful death under state and federal law.  At the time of the incident, DECEDENT regularly provided CARLOS MAGALLON with up to $1000 per month to help pay for living necessities such as shelter, food, and medicines.  CARLOS MAGALLON was financially dependent upon DECEDENT for this financial support.  In addition to his federal claims, CARLOS MAGALLON therefore brings claims for wrongful death damages under state law pursuant to California Code of Civil Procedure § 377.60(b).

6.    Plaintiff ESMERALDA CASTELLANOS is the mother of the decedent and sues in her individual capacity for wrongful death under state and federal law.  At the time of the incident, DECEDENT regularly provided ESMERELDA CASTELLANOS with money to help pay for living necessities such as shelter, food, and medicines.  ESMERELDA CASTELLANOS was financially dependent upon DECEDENT for this financial support.  In addition to her federal claims, ESMERELDA MAGALLON therefore brings claims for wrongful death damages under state law pursuant to California Code of Civil Procedure §377.60(b).

7.    At all relevant times, Plaintiffs were and are residents of the State of California.

8.    Defendant COUNTY OF VENTURA ("COUNTY") was and is a public entity organized and existing under and by virtue of the laws of the State of California.  The VENTURA COUNTY SHERIFF'S DEPARTMENT ("VCSD") was and is a subdivision of COUNTY.

9.    Defendant CORRECTIONAL MEDICAL GROUP COMPANIES, INC. ("CMGC") was and is a corporate entity duly organized under and by virtue of the laws of the State of California.  CMGC, including its agents, deputes,

3

employees, and independent contractors, at all times mentioned herein, was and is an agent of the COUNTY and VCSD, and was and is under contract with COUNTY for the purpose of providing medical care and treatment on behalf of COUNTY, to civil detainees, pre-trial detainees, and sentenced inmates under the custody, care and control of COUNTY.  At all relevant times, CMGC and its agents and employees were acting under color of law and within the course and scope of their employment, under the direction and agency of COUNTY to provide such care and treatment.  CMGC operates a medical unit inside the Ventura County Pre-Trial Detention Facility ("PTDF"), which houses its administrative offices including professional offices, clinics, including treatment rooms such as safety cells and examination rooms, inside the jail.  As such, CMGC occupies, controls, and operates an actual physical place in the PTDF, and public accommodation inside the jail to provide medical and mental health treatment.  Private entities under contract with the government may be held liable under section 1983.  *See Brentwood Academy v. Tennessee Secondary School Athletic Assoc.*, 531 U.S. 288, 295-96 (2001).  "A private physician or hospital that contracts with a public prison system to provide treatment for inmates performs a public function and acts under color of law for purposes of § 1983."  *George v. Sonoma Cty. Sheriff's Dep't*, 732 F. Supp. 2d 922, 934 (N.D. Cal. 2010) (citing *West v. Atkins*, 487 U.S. 42, 57 n.15 (1988).

10.    Defendant CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED. ("CFMG") was and is a corporate entity duly organized under and by virtue of the laws of the State of California.  CFMG, including its agents, deputes, employees, and independent contractors, at all times mentioned herein, was and is an agent of the COUNTY and VCSD, and was and is under contract with COUNTY for the purpose of providing medical care and treatment on behalf of COUNTY, to civil detainees, pre-trial detainees, and sentenced inmates under the custody, care and control of COUNTY.  At all relevant times, CFMG and its agents and employees were acting under color of law and within the course and scope of

1   their employment, under the direction and agency of COUNTY to provide such care

2   and treatment.  CFMG operates a medical unit inside the Ventura County PTDF,

3   which houses its administrative offices including professional offices, clinics,

4   including treatment rooms such as safety cells and examination rooms, inside the

5   jail.  As such, CFMG occupies, controls, and operates an actual physical place in the

6   PTDF, and public accommodation inside the jail to provide medical and mental

7   health treatment.  Private entities under contract with the government may be held

8   liable under section 1983.  *See Brentwood Academy v. Tennessee Secondary School*

9   *Athletic Assoc.*, 531 U.S. 288, 295-96 (2001).  "A private physician or hospital that

10  contracts with a public prison system to provide treatment for inmates performs a

11  public function and acts under color of law for purposes of § 1983." *George v.*

12  *Sonoma Cty. Sheriff's Dep't*, 732 F. Supp. 2d 922, 934 (N.D. Cal. 2010) (citing *West*

13  *v. Atkins*, 487 U.S. 42, 57 n.15 (1988).

14        11.     At all relevant times, Defendant JENNIFER ALCARAZ

15  ("ALCARAZ") was a medical services employee of CMGC and/or CFMG.  At all

16  times relevant to this Complaint, ALCARAZ was acting under the course and scope

17  of her employment with CMGC and/or CFMG, under the direction and supervision

18  of COUNTY and with the complete authority and ratification of her principal,

19  CMGC and/or CFMG and the COUNTY.  ALCARAZ is being sued in her

20  individual capacity.

21        12.     At all relevant times, Defendant JOANA BAEZ ("BAEZ") was a

22  medical services employee of CMGC and/or CFMG.  At all times relevant to this

23  Complaint, BAEZ was acting under the course and scope of her employment with

24  CMGC and/or CFMG, under the direction and supervision of COUNTY, and with

25  the complete authority and ratification of her principal, CMGC and/or CFMG and

26  the COUNTY.  BAEZ is being sued in her individual capacity.

27        13.     At all relevant times, Defendant DIANA BELMONTES

28  ("BELMONTES") was a medical services employee of CMGC and/or CFMG.  At

1    all times relevant to this Complaint, BELMONTES was acting under the course and

2    scope of her employment with CMGC and/or CFMG, under the direction and

3    supervision of COUNTY, and with the complete authority and ratification of her

4    principal, CMGC and/or CFMG and the COUNTY.  BELMONTES is being sued in

5    her individual capacity.

6         14.    At all relevant times, Defendant HEATHER HUFFMAN, M.D.

7    ("HUFFMAN") was a medical services employee of CMGC and/or CFMG.  At all

8    times relevant to this Complaint, HUFFMAN, M.D., was acting under the course

9    and scope of her employment with CMGC and/or CFMG, under the direction and

10   supervision of COUNTY, and with the complete authority and ratification of her

11   principal, CMGC and/or CFMG and the COUNTY.  Liability may not be imposed

12   on supervisory personnel for the actions of their employees under a theory

13   of *respondeat superior.* When the named defendant holds a supervisorial position,

14   the causal link between the defendant and the claimed constitutional violation must

15   be specifically alleged.  HUFFMAN, M.D., is being sued individually and in her

16   capacity as a supervisor.

17        15.    At all relevant times, Defendant EUNICIA MANSAYON

18   ("MANSAYON") was a medical services employee of CMGC and/or CFMG.  At

19   all times relevant to this Complaint, MANSAYON was acting under the course and

20   scope of her employment with CMGC and/or CFMG, under the direction and

21   supervision of COUNTY, and with the complete authority and ratification of her

22   principal, CMGC and/or CFMG and the COUNTY.  MANSAYON is being sued in

23   her individual capacity.

24        16.    At all relevant times, Defendant DEPUTY BRADLEY BORDON

25   ("BORDON") was a Sheriff's deputy working for VCSD, assigned to PTDF.

26   DEPUTY BORDON was acting under color of law and within the course and scope

27   of his employment as a deputy for the VCSD.  DEPUTY BORDON was acting

28   within the complete authority and ratification of his principal, Defendant COUNTY.

17.     At all relevant times, Defendant DEPUTY STEVEN DONLON ("DONLON") was a Sheriff's deputy working for VCSD, assigned to COUNTY's PTDF.  DEPUTY DONLON was acting under color of law and within the course and scope of his employment as a deputy for the VCSD.  DEPUTY DONLON was acting within the complete authority and ratification of his principal, Defendant COUNTY.

18.     At all relevant times, Defendant SHERIFF'S SERVICE TECHNICIAN ("SST") MANUAL ESPARZA ("ESPARZA") was a SST working for VCSD, assigned to COUNTY's PTDF.  SST ESPARZA was acting under color of law and within the course and scope of his employment as a deputy for the VCSD.  SST ESPARZA was acting within the complete authority and ratification of his principal, Defendant COUNTY.

19.     At all relevant times, Defendant DEPUTY PAUL JESSON ("JESSON") was a Sheriff's deputy working for VCSD, assigned to COUNTY's PTDF.  DEPUTY JESSON was acting under color of law and within the course and scope of his employment as a deputy for the VCSD.  DEPUTY JESSON was acting within the complete authority and ratification of his principal, Defendant COUNTY.

20.     At all relevant times, Defendant DEPUTY JAMES SEGOVIA ("SEGOVIA") was a Sheriff's deputy working for VCSD, assigned to COUNTY's PTDF.  DEPUTY SEGOVIA was acting under color of law and within the course and scope of his employment as a deputy for the VCSD.  DEPUTY SEGOVIA was acting within the complete authority and ratification of his principal, Defendant COUNTY.

21.     At all relevant times, Defendant DEPUTY RAUL ZAMORA ("ZAMORA") was a Sheriff's deputy working for VCSD, assigned to COUNTY's PTDF.  DEPUTY ZAMORA was acting under color of law and within the course and scope of his employment as a deputy for the VCSD.  DEPUTY ZAMORA was

1   acting within the complete authority and ratification of his principal, Defendant

2   COUNTY.

3       20.    The true names, identities or capacities, whether individual, associate,

4   corporate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown

5   to Plaintiffs at this time, who therefore sue said defendants by such fictitious names.

6   Plaintiffs are informed and believe that each of the defendants sued herein as a

7   DOES are legally responsible in some manner for the events and happenings that

8   caused the decedent's death.  Plaintiffs will amend the complaint to name the DOE

9   Defendants when their true names, identities or capacities are ascertained.

10      21.    At all relevant times, Defendants ALCARAZ; BAEZ; BELMONTES;

11  HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON;

12  SEGOVIA; ZAMORA; and DOES 1 through 10 were officers, staff members,

13  employees and agents of Defendant COUNTY, or of other organizations with whom

14  COUNTY has a legal relationship, or were officers, staff members, employees and

15  agents of the custodial facilities located in the County of Ventura, and which were

16  owned, maintained, controlled, and supervised by COUNTY and its law

17  enforcement agencies, respectively.  Defendants ALCARAZ; BAEZ;

18  BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON;

19  ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1 through 10, inclusive,

20  and each of them, were individuals engaged in the operation, business, and/or

21  management of custodial, jail, and/or prison facilities and/or were engaged in the

22  provision of services, medical care, protection, administration, and daily needs to

23  inmates at the custodial facilities within the COUNTY where decedent was being

24  held at the time of his death.

25      22.    At all relevant times, all defendants, and each of them, were the agents

26  and/or employees of each other acting within the scope and purpose of said agency

27  and employment and under color of law.

28

THIRD AMENDED COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

## IV.   <u>FACTS COMMON TO ALL CLAIMS</u>

23.     Mr. Magallon had a history of drug addiction and hypertension, for which he required medication.  Mr. Magallon was arrested by one or more City of Oxnard Police Officers on July 11, 2017 at approximate 5:22 a.m.

24.     On July 11, 2017, Mr. Magallon was transferred from the custody and care of the City of Oxnard into the custody and care of the COUNTY.  The COUNTY and CMGC and/or CFMG, through Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10, had actual and/or constructive knowledge of Mr. Magallon's medical needs, including that Mr. Magallon was experiencing an acute drug withdrawal and that he was hypertensive. During the period of time that Mr. Magallon was in the custody and care of the COUNTY and CMGC and/or CFMG, and despite the COUNTY and CMGC and/or CFMG's knowledge of Mr. Magallon's medical distress, emergency, and/or need for medical care, Mr. Magallon was not adequately medically evaluated or screened, he received inadequate or no medical care for his state of medical emergency or distress, and he was not taken to a hospital by Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; or DOES 1-10, who were responsible for Mr. Magallon's custody and care.  Any medical care provided by the COUNTY, CMGC and Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 to Mr. Magallon was inadequate, fell below the professional standard of care, and was unreasonable under the circumstances.

25.     The COUNTY and CMGC and/or CFMG failed to adequately train their peace officers, medical staff, and custodial employees to handle the sort of routine circumstances with which they regularly come into contact, such as evaluating and treating detainees who are experiencing a medical emergency, who

9

1  are in a state of medical distress, or who require medical care, specifically those
2  detainees who are experiencing drug withdrawal and who are hypertensive.

3      26.    On information and belief, between his arrest on July 11, 2017 and his
4  death on July 12, 2017, Mr. Magallon exhibited observable signs of medical distress
5  and obvious medical emergency.

6      27.    Between 9:00 a.m. and 10:00 a.m. on July 12, 2017, Mr. Magallon
7  died.  He was found unresponsive in his cell by COUNTY jail staff.   The autopsy
8  report lists the cause of death as cardiac hypertrophy due to hypertension and
9  chronic methamphetamine abuse.

10     28.    The failure by Defendants ALCARAZ; BAEZ; BELMONTES;
11 HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON;
12 SEGOVIA; ZAMORA; and DOES 1-10, who are COUNTY employees, to provide
13 or obtain adequate medical care for Mr. Magallon was a proximate cause of Mr.
14 Magallon's death.  Mr. Magallon received inadequate or no treatment for his
15 hypertension, inadequate or no treatment for his drug withdrawal, and was never
16 hospitalized.  Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.;
17 MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA;
18 ZAMORA; and DOES 1-10 failed to detect the observable signs of Mr. Magallon's
19 drug withdrawal and medical emergency because the COUNTY and CMGC and/or
20 CFMG failed to train their staff as to the signs and symptoms of this common
21 medical emergency.  In the alternative, Mr. Magallon's signs and symptoms of drug
22 withdrawal and acute hypertension were observed by Defendants ALCARAZ;
23 BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON;
24 ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10.  However,
25 Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON;
26 BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-
27 10 failed to obtain or provide him with adequate medical care, despite his acute
28 need, pursuant to and consistent with a pattern and practice of failing to provide

adequate care to detainees who are experiencing drug withdrawal and hypertension, such as any competent medical evaluation or ongoing medical evaluations, regular checks, proper medications to counteract the potentially fatal symptoms of drug withdrawal and hypertension, and hospitalization.

29.    The COUNTY, CMGC and/or CFMG and Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 had the care and custody of Mr. Magallon, assuming duties under federal and state laws and regulations, as well as under common law, designed for the protection and benefit of persons such as Mr. Magallon to provide reasonable and adequate care, safety, and medical care for serious medical needs.

30.    On or about June 4, 2018, Plaintiffs filed claims pursuant to Section 910 of the Government Code of the State of California with the COUNTY.  Claims were filed on behalf of all three plaintiffs as individuals and on behalf of the decedent for his survival claims.  The COUNTY rejected the tort claims.

## FIRST CLAIM FOR RELIEF

**Denial of Medical Care (Fourth and Fourteenth Amendment) 42 U.S.C. § 1983 (By M.M.M. as successor in interest against Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and Does 1-10)**

**(Survival Claim)**

31.    Plaintiffs repeat and re-allege each and every of the foregoing allegations above with the same force and effect as if fully set forth herein.

32.    At the time of his death, and on information and belief, Mr. Magallon was a pre-arrangement, pretrial detainee.  He had not yet seen any magistrate or undergone any arraignment proceedings when he died.

33.    "A prison that deprives prisoners of basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has

no place in civilized society." *Brown v. Plata*, 131 S. Ct. 1910, 1928 (2011). Accordingly, the Fourteenth Amendment to the United States Constitution protects the right of pretrial detainees to adequate medical care.  Claims of pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979); *Frost v. Agnos,* 152 F.3d 1124, 1128 (9th Cir.1998); *Carnell v. Grimm,* 74 F.3d 977, 979 (9th Cir.1996); *Gibson v. Cnty. of Washoe, Nev.,* 290 F.3d 1175, 1187 (9th Cir. 2002).

34.  Throughout the duration of Mr. Magallon's detention, he had the established right to adequate medical care for his serious medical needs, including his hypertension and drug withdrawal.

35.  Mr. Magallon suffered from hypertension and was in a state of acute medical distress and/or experiencing a medical emergency due to drug withdrawals while he was in the custody and care of the COUNTY and CMGC and/or CFMG. He had observable signs of medical distress, of medical emergency, and of drug withdrawal and the COUNTY and CMGC and/or CFMG, through Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10, had actual and constructive knowledge of Mr. Magallon's medical needs either based on their observations of him or based on information from and requests by Mr. Magallon.  Mr. Magallon received inadequate or no medical treatment in response to his serious medical needs.  Mr. Magallon did not receive any competent medical evaluation or ongoing medical evaluations, regular checks, proper medications to counteract the potentially fatal symptoms of drug withdrawal and hypertension, or hospitalization.

36.  COUNTY jail staff discovered Mr. Magallon unresponsive in his cell, where he died between 9:00 and 10:00 am on July 12, 2017.

37.     The aforementioned defendants' failure to provide proper and necessary medical care caused Mr. Magallon serious bodily harm and death. The aforementioned denial of medical care violated Mr. Magallon's right to Due Process under the Fourteenth Amendment.

38.     Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 are each responsible for the denial of adequate medical care to Mr. Magallon either because they themselves failed to provide or obtain adequate medical care, because they were integral participants in the denial of adequate medical care, or because they failed to intervene to prevent the denial of adequate medical care.

39.     The conduct of the aforementioned defendants was malicious, oppressive, and in reckless disregard for the rights and safety of Mr. Magallon, and therefore warrants the imposition of exemplary and punitive damages against Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10.

40.     Accordingly, Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 each are liable to Plaintiff for compensatory and punitive damages, including survival damages (loss of life, loss of enjoyment of life, and pre-death pain and suffering) under 42 U.S.C. § 1983 and California Code of Civil Procedure § 377.30 and § 377.60.  Plaintiffs also seek reasonable attorneys' fees pursuant to 28 U.S.C. §1988, costs, and interest.

/ / /

/ / /

**SECOND CLAIM FOR RELIEF**

**Unlawful Interference with Familial Relationship**

**(Substantive Due Process – Fourteenth Amendment - 42 U.S.C. § 1983)**

**(By all Plaintiffs in their individual capacities against Defendants ALCARAZ;**

**BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON;**

**DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and Does 1-10)**

41.     Plaintiffs repeat and re-allege each and every of the foregoing allegations with the same force and effect as if fully set forth herein.

42.     Plaintiffs have a right under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from unlawful state interference in their familial relationship with their father and son, Jose Magallon.

43.     As a result of defendants' deliberate indifference and failure to provide needed medical care to Mr. Magallon, he died.  The conduct of Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 was unreasonable under the circumstances, not further or related to any legitimate penal or law enforcement interest or objective, conscious shocking, and exhibited a deliberate indifference to the decedent's rights.  Plaintiffs were thereby deprived of their constitutional rights and familial relationship with Mr. Magallon.

44.     Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 are each responsible for the denial of adequate medical care to Mr. Magallon either because they themselves failed to provide or obtain adequate medical care, because they were integral participants in the denial of adequate medical care, or because they failed to intervene to prevent the denial of adequate medical care.

45.     As a direct and proximate cause of the acts of Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON;

ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10, Plaintiffs have been deprived of the life-long comfort, support, society, care and sustenance of Decedent, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses and a loss of financial support.

46. The conduct of Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 was willful, wanton, malicious and done with an evil motive and intent and a reckless disregard for the rights and safety of Decedent and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10.

47. Accordingly, Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 each are liable to Plaintiffs for compensatory and punitive damages, including wrongful death damages, under 42 U.S.C. § 1983 and California Code of Civil Procedure § 377.60.  Plaintiffs also seek reasonable attorneys' fees pursuant to 28 U.S.C. § 1988, costs, and interest.

### THIRD CLAIM FOR RELIEF

***Monell* Liability – Failure to Train - 42 U.S.C. § 1983**

**(By all Plaintiffs against COUNTY, CMGC and/or CFMG and Does 1-10)**

48. Plaintiffs repeat and re-allege each and every of the foregoing allegations with the same force and effect as if fully set forth herein.

49. The training of the Defendant COUNTY and CMGC and/or CFMG was not adequate to train its employees, agents, and staff to handle the usual and recurring situations with which they must deal, such as recognizing the observable symptoms of hypertension and drug withdrawal in detainees, and providing

1  adequate medical care to detainees suffering from hypertension and drug

2  withdrawal.

3      50.    The Defendants COUNTY and CMGC and/or CFMG was deliberately

4  indifferent to the known or obvious consequences of its failure to adequately train

5  its employees, agents, and staff.  At all times relevant, Defendants ALCARAZ;

6  BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON;

7  ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 were acting under

8  color of law.

9      51.    The failure of Defendants COUNTY and CMGC and/or CFMG to

10  provide adequate training caused the deprivation of the plaintiffs' and decedent's

11  rights by the employees, agents, and staff.  That is, the failure by the Defendants

12  COUNTY and CMGC and/or CFMG to train is so closely related to the deprivation

13  of the plaintiffs' and decedent's rights as to be the moving force that caused the

14  decedent's death.

15      52.    Accordingly, Defendants COUNTY and CMGC and/or CFMG are

16  liable to Plaintiffs for compensatory damages, including survival damages (for the

17  decedent's loss of life, loss of enjoyment of life, and pre-death pain and suffering)

18  and wrongful death damages (the life-long deprivation of the decedent's comfort,

19  support, society, care and sustenance) under 42 U.S.C. § 1983 and California Code

20  of Civil Procedure § 377.30 and § 377.60.  Plaintiffs also seek reasonable attorneys'

21  fees pursuant to 28 U.S.C. §1988, costs, and interest.

22                      **FOURTH CLAIM FOR RELIEF**

23      ***Monell* Liability – Unconstitutional Custom and Practice - 42 U.S.C. § 1983**

24        **(By all Plaintiffs against COUNTY, CMGC and/or CFMG and Does 1-10)**

25      53.    Plaintiffs repeat and re-allege each and every of the foregoing

26  allegations with the same force and effect as if fully set forth herein.

27      54.    The actions and inaction of Defendants ALCARAZ; BAEZ;

28  BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON;

ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10, in failing to provide adequate medical care to Mr. Magallon, were pursuant to a widespread or longstanding practice or custom of the Defendants COUNTY and CMGC and/or CFMG.

55.    The Defendants COUNTY and CMGC and/or CFMG's widespread or longstanding practice or custom caused the deprivation of the plaintiffs' and the decedent's rights by Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10.  The Defendants COUNTY and CMGC and/or CFMG's widespread or longstanding practice or custom is so closely related to the deprivation of the plaintiffs' and the decedent's rights as to be the moving force that caused the decedent's death.

56.    Accordingly, Defendants COUNTY and CMGC and/or CFMG each are liable to Plaintiffs for compensatory damages, including survival damages (for the decedent's loss of life, loss of enjoyment of life, and pre-death pain and suffering) and wrongful death damages (the life-long deprivation of the decedent's comfort, support, society, care and sustenance) under 42 U.S.C. § 1983 and California Code of Civil Procedure § 377.30 and § 377.60.  Plaintiffs also seek reasonable attorneys' fees pursuant to 28 U.S.C. §1988, costs, and interest.

## FIFTH CLAIM FOR RELIEF

### Denial of Medical Care — California Law

### (By all Plaintiffs against Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and Does 1-10 and COUNTY and CMGC and/or CFMG vicariously)

57.    Plaintiffs repeat and re-allege each and every of the foregoing allegations above with the same force and effect as if fully set forth herein.

58.     California Government Code Sections 845.6, 855.8, and 856 provide that a public entity or a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in its custody.  Also, a public employee, acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

59.     The California Constitution also protect a detainee's right to receive adequate medical care and imposes upon a governmental entity the responsibility to ensure that adequate medical care is being provided.

60.     As set forth herein, throughout the duration of Mr. Magallon's detention, his serious medical needs were and would have been obvious to the properly trained custody or health care professional.  However, he was denied medical care in violation of the statutes and common law of the State of California and in violation of the California Constitution.

61.     The aforementioned defendants' failure to provide adequate medical care caused Decedent serious bodily harm and death.  Decedent's serious medical needs were obvious.  Although Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 knew or should have known that failure to treat Decedent's serious medical condition could result in further significant injury or the unnecessary infliction of pain, the aforementioned defendants deliberately and unreasonably disregarded Decedent's serious medical needs.

62.     Defendants COUNTY and CMGC and/or CFMG are vicariously liable for the wrongful acts of Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 pursuant to sections 815.2 and 845.6 of the California Government Code. Government Code § 820, subdivision (a) provides that

18

except as otherwise statutorily provided, "a public employee is liable for injury caused by his act or omission to the same extent as a private person." Subdivision (a) of section 815.2 provides that the entity "is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would ... have given rise to a cause of action against that employee..."  Thus, the general rule is that an employee of a public entity is liable for the employee's torts to the same extent as a private person § 820(a); and the public entity is vicariously liable for any injury which its employee causes, § 815.2(a), to the same extent as a private employer; Government Code § 815(b). Therefore, the Defendants COUNTY and CMGC and/or CFMG are liable for the acts of its employees.

63.    The conduct and inaction of the aforementioned defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 was malicious, oppressive and in reckless disregard for the rights and safety of Decedent, and therefore warrants the imposition of exemplary and punitive damages against Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10.

64.    Defendants COUNTY, CMGC and/or CFMG, ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 are liable to Plaintiffs for compensatory damages, including both survival damages pursuant to California Code of Civil Procedure §377.30 and wrongful death damages pursuant to California Code of Civil Procedure § 377.60.

65.    Plaintiffs seek reasonable attorneys' fees pursuant to California Code of Civil Procedure Section 1021.5, costs, and interest.

**SIXTH CLAIM FOR RELIEF**

**Negligence (Wrongful Death)**

**(By all Plaintiffs against Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 and COUNTY and CMGC and/or CFMG vicariously)**

66.    Plaintiffs repeat and re-allege each and every of the foregoing allegations above with the same force and effect as if fully set forth herein.

67.    At all relevant times, Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 owed a duty of care to Mr. Magallan.  This duty required Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 to act reasonably in providing adequate medical care for detainees suffering from physical illness, and who are in a state of medical distress or medical emergency, including hypertension and drug withdrawals, inadequate treatment for which is often fatal, as provided by California Government Code Section 855.8.

68.    This duty also required Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 to exercise reasonable care in the hiring, training, and retention of the staff of their custodial and medical care facilities, including defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10, such that its employees were equipped to notice and properly respond to observable signs of medical distress and medical emergency and to provide adequate medical care to detainees.

69.     COUNTY, CMGC and/or CFMG and Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and Does 1-10 negligently failed to implement proper training for custodial, medical care, and jail staff, to remedy and address systemic problems in COUNTY custodial facilities concerning inadequate medical care.

70.     Plaintiffs further allege that Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 were professionally negligent in their administration of medical care to Mr. Magallon, who was suffering from hypertension, going through a drug withdrawal, and whose death could have been prevented had he received proper medical care such as proper medication, proper medical screening, and/or hospitalization.

71.     The conduct and inaction of the aforementioned defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 was malicious, oppressive and in reckless disregard for the rights and safety of Decedent, and therefore warrants the imposition of exemplary and punitive damages against Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10.

72.     The Defendants COUNTY and CMGC and/or CFMG are vicariously liable for the wrongful acts of Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10, who are the employees of the municipality pursuant to sections § 815.2, § 820, and § 845.6 of the California Government Code. Government Code § 820, subdivision (a) provides that except as otherwise statutorily provided, "a public employee is liable for injury caused by his act or

omission to the same extent as a private person."  Subdivision (a) of section 815.2 provides that the entity "is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would ... have given rise to a cause of action against that employee..." Thus, the general rule is that an employee of a public entity is liable for the employee's torts to the same extent as a private person § 820(a); and the public entity is vicariously liable for any injury which its employee causes § 815.2(a) to the same extent as a private employer Government Code § 815(b). Therefore, the Defendants COUNTY and CMGC are liable for the acts of its employees.

73.    Defendants COUNTY, CMGC and/or CFMG and Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 each are liable to Plaintiffs for compensatory damages, including both survival damages pursuant to California Code of Civil Procedure  § 377.30 and wrongful death damages pursuant to California Code of Civil Procedure § 377.60.  Plaintiffs also seek reasonable attorneys' fees pursuant to C.C.P. Section 1021.5, costs, and interest.

/ / /

/ / /

/ / /

/ / /

/ / /

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against the defendants as follows:

1. Compensatory general, economic, and special damages in an amount in accordance to proof;

2. Exemplary damages against Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 (and not against COUNTY) for the sake of example and by way of punishing said Defendants ALCARAZ; BAEZ; BELMONTES; HUFFMAN, M.D.; MANSAYON; BORDON; DONLON; ESPARZA; JESSON; SEGOVIA; ZAMORA; and DOES 1-10 for their willful acts of reckless disregard, malice, and/or oppression.

3. Funeral and burial expenses.

4. Survival damages.

5. Wrongful death damages.

6. Reasonable attorneys' fees and expenses of litigation, including those fees permitted by 42 U.S.C. §1988 and C.C.P. § 1021.5;

7. Costs of suit necessarily incurred herein;

8. Interest; and

9. Such further relief as the Court deems just or proper.

DATED: October 14, 2019              LAW OFFICES OF DALE K. GALIPO
                                     CARRILLO LAW FIRM


                                     By: _____/s Marcel F. Sincich_____
                                        Dale K. Galipo
                                        Luis A. Carrillo
                                        Marcel F. Sincich
                                        Michael S. Carrillo
                                        *Attorneys for Plaintiffs*

1

## **DEMAND FOR JURY TRIAL**

2

3       Plaintiffs hereby demand a trial by jury.

4

5    DATED: October 14, 2019            LAW OFFICES OF DALE K. GALIPO
                                        CARRILLO LAW FIRM
6

7

8                                       By___/s Marcel F. Sincich_____
                                          Dale K. Galipo
9                                         Luis A. Carrillo
                                          Marcel F. Sincich
10                                        Michael S. Carrillo
                                          *Attorneys for Plaintiffs*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28